# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re: | Case No. 05-34286 |
| | Chapter 11 |
| PRICE OIL, INC. et al.,[1] | (Jointly Administered) |
| Debtors. | |

## MEMORANDUM OPINION

Before the court is Moore Oil Company, Inc.'s (hereafter "Moore Oil") August 9, 2006 motion for further payment of proceeds from the sale of realty. Colonial Bank (hereinafter "Colonial"), the second mortgagee, filed an objection to Moore Oil's motion. At issue is the proper interest rate applicable to Moore Oil's first mortgage claim.

### Jurisdiction

This court's jurisdiction is derived from 28 U.S.C. § 1334 and from a general order of the United States District Court for this district referring title 11 matters to the Bankruptcy Court. Further, because this matter involves the allowance or disallowance of a claim against the estate, this is a core proceeding under 28 U.S.C. § 157(b)(2)(B) thereby extending this court's jurisdiction to the entry of a final order or judgment.

### Procedural Background and Undisputed Facts

The chapter 11 debtor, Price Oil, Inc., filed this chapter 11 case on December 22, 2005. At that time, Price Oil owned realty and improvements on Vaughn Road in Montgomery, Alabama. That

---

[1] Price Oil, Inc. is being jointly administered with Armstrong Properties, L.L.C. (05-34288), Lion's Pride Properties, L.L.C. (05-34289), Roadmaster Food Stores, L.L.C. (05-34290), Roadmaster One, L.L.C. (05-34291), and Torque Transportation, L.L.C. (05-34292).

property is subject to the first mortgage of Moore Oil and the second mortgage of Colonial.²

On June 21, 2006, Price Oil filed a motion to approve the sale of the Vaughn Road property to Bhavik R. Patel for $1,925,000 (Doc. #639). Moore Oil objected to the proposed sale (Doc. #663) contending that after payment of its $1,917,518.35 secured claim, little or none of the sales proceeds would remain for the benefit of the bankruptcy estate or of the second mortgagee. Colonial Bank filed a response (Doc. #667) to Moore Oil's objection disputing the amount of Moore Oil's claim.

Following a hearing on the debtor's motion, an order (Doc. #681) entered approving the sale and authorizing the payment of $1,630,570.98 of the sales proceeds to Moore Oil on its first mortgage claim. Further, the order required that the remaining net sales proceeds be held by the debtor in trust pending a final determination of the claim amount.

Moore Oil filed the instant motion on August 9, 2006 for payment of its secured claim from the remainder of the sale proceeds. Colonial contends that Moore Oil's claim is improperly inflated due to its use of the default interest rate in calculating its claim.³ The relevant facts are not in dispute.

The promissory note underlying the mortgage provides that after maturity of the note (by acceleration or otherwise), a past due

---

² Moore Oil is the assignee of Tiger Peg Capital Corp. with respect to the Vaughn Road note and mortgage.

³ Colonial contends that Moore Oil's claim is improper for other reasons as well. Colonial maintains that Moore Oil wrongfully delayed the closing of the Vaughn Road sale, and that as a result, no interest should be allowed on its claim beyond the date of the originally scheduled closing. Further, Colonial asserts that the attorney's fee portion of Moore Oil's claim, $176,436.99, is unreasonable. Because these matters involve factual disputes, they will be considered at a November 14, 2006, evidentiary hearing.

(default) rate of interest applies to any unpaid principal balance.[4] The default rate is the non-default contract rate plus 5%.

In addition, the note provides that upon the occurrence of an event of default, the holder may elect to accelerate the maturity of the entire note without notice to the obligor. The credit agreement defines events of default to include the failure of the borrower to pay any installment payment, together with any delinquency fee, within 41 days of the original installment due date. Commencement of a bankruptcy case by the obligor is also an event of default.

Price Oil paid the December 2005 installment payment on the note on December 20, 2005, two days before filing the chapter 11 petition.[5]

Conclusions of Law

Under 11 U.S.C. § 506, an over-secured creditor is entitled to post-petition interest, reasonable fees, costs, and charges as provided in the contract under which the claim arose. The exact text of the statute provides:

> (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b). Because the value of the Vaughn Road property exceeds Moore Oil's secured claim, it is entitled to interest

---

[4] The note matures in the year 2018.

[5] The note is payable in monthly installments of $14,630.50 due on the 20th of each month.

on its claim as provided by the contract.

The contract provides for application of a default rate of interest upon maturity of the note. Maturity occurs either upon the passage of time to the contractual due date or upon Moore Oil's election to accelerate the note following the occurrence of an event of default. There is no evidence that an event of default occurred prior to the December 22, 2005, filing of the bankruptcy case.

Installment payment default:

Moore Oil contends that Price Oil is in default as a result of its failure to make the installment payments. That default, according to Moore Oil, permits it to elect to accelerate its claim and invoke the default interest rate provisions of the contract.

Price Oil, however, paid all or part of the December 2005 installment on December 20, 2005. Obviously, if the full payment was made, Price Oil would have been current in its payments under the note as of the bankruptcy petition date. Hence, no event of default would have occurred giving Moore Oil the contractual right to accelerate the note.

Further, even if only a partial payment was made under the December 2005 installment, the contract provided Price Oil a 41-day grace period to cure the default. Moore Oil, pursuant to the contract, could not have elected to accelerate the note prior to the end of that period which ran beyond the bankruptcy petition date.

Once the bankruptcy petition was filed, Moore Oil could not have accelerated the note without violating the automatic stay. *See In re PCH Assocs.,* 122 B.R. 181, 198 (Bankr. S.D.N.Y. 1990) ("post-filing acceleration of the Note . . . would have been null and void" as stay violation), *In re Grant Broadcasting,* 75 B.R. 819, 823 (E.D. Pa. 1987) (automatic stay prevents creditor from declaring default on note); *In re Texaco, Inc.,* 81 B.R. 804 (Bankr. S.D.N.Y. 1988) (modifying the automatic stay to permit creditor to accelerate

its note without making demand for payment). Although Moore Oil moved for stay relief, it did not seek relief from stay in order to accelerate the note, and its motion, as to the Vaughn Road property, was ultimately denied.

Finally, it is true that under the contract, Moore Oil could accelerate the note without giving notice of that fact to Price Oil. However, there is no evidence that either an event of default occurred or that Moore Oil accelerated the note before the bankruptcy petition was filed.

For these reasons, Price Oil's failure to make installment payments under the note did not give rise to a contractual event of default permitting Moore Oil to accelerate the note. Without acceleration, the contract provisions relating to the default interest rate are inapplicable.

<u>Default upon bankruptcy clause</u>:

Moore Oil also contends that the commencement of this bankruptcy case by Price Oil was a contractual event of default permitting it to accelerate the note. The court notes that most of the authority considering the issue of *ipso facto* clauses in bankruptcy cases have done so in connection with cases involving executory contracts (§ 365(e)) and estate property (§ 541(c)). Yet, "[i]t is axiomatic that the bankruptcy laws disfavor ipso facto clauses which purport to entitle a creditor to call due an indebtedness solely on account of a bankruptcy filing." *Dossett v. First Union Nat'l Bank (In re Dossett)*, 1991 WL 11002466, 1 (Bankr. S.D. Ga. 1991); *Riggs Nat'l Bank v. Perry (In re Perry)*, 729 F.2d 982 (4th Cir. 1984)(refusing to grant relief from stay where the creditor depended upon the default-upon-filing clause to prove its entitlement to relief); *McGlockling v. Chrysler Financial Co., LLC (In re McGlockling)*, 296 B.R. 884, (Bankr. S.D. Ga. 2003)(holding that the rationale for invalidating *ipso facto* clauses in bankruptcy is that debtors should not be hampered in their rehabilitation or distribution efforts). In addition, as previously noted, there is no evidence that Moore Oil actually accelerated the note post bankruptcy, and it has not sought

relief from stay to do so.

Therefore, the court finds that the due on bankruptcy provision of the parties' contract did not result in the acceleration of the note. Without acceleration, the terms of the contract related to the default interest rate were not invoked.

## Conclusion

For the foregoing reasons, the court concludes that Moore Oil's claim on the Vaughn Road sales proceeds is improperly inflated due to the application of the default interest rate. A separate order consistent with this memorandum opinion will enter.

Done this 14th day of November, 2006.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Charles R. Johanson, III, Attorney for Moore Oil Company
Joel Connally, Attorney for Colonial Bank
Jay R. Bender and M. Leesa Booth, Attorneys for Price Oil